1                    UNITED STATES DISTRICT COURT

2                          DISTRICT OF MAINE

3

4     UNITED STATES OF AMERICA        )
                                      )
5                                     )
            vs.                       )
6                                     )
                                      )
7     GREGORY P. VIOLETTE aka         )          CRIMINAL ACTION
      PAUL E. VIOLETTE aka            )
8     GREGORY VIOLETTE aka            )   Docket No. 1:00-cr-00026-GZS-1
      GREGORY PAUL VIOLETTE           )
9     aka G. VIOLETTE aka             )      FINAL REVOCATION HEARING
      G.P. VIOLETTE aka PAUL G.       )
10    VIOLETTE aka PAUL GREGORY       )
      VIOLETTE aka P.G. VIOLETTE,     )
11                                    )
                    Defendant.        )
12

13                    TRANSCRIPT OF PROCEEDINGS

14        Pursuant to notice, the above-entitled matter came on

15    for FINAL REVOCATION HEARING before the HONORABLE GEORGE Z.

16    SINGAL, in the United States District Court, Bangor, Maine, on

17    the 16th day of April, 2019, at 1:03 p.m.

18

19    APPEARANCES:

20    For the Government:            James M. Moore, Esquire

21    For the Defendant:            Zachary W. Brandmeir, Esquire

22

23                    Julie G. Edgecomb, RMR, CRR
                         Official Court Reporter

24

25    Proceedings recorded by mechanical stenography; transcript
      produced by computer.

1        (Defendant present with counsel in open court.)

2            THE COURT:  Good afternoon, counsel.

3            MR. MOORE:  Good afternoon, Your Honor.

4            THE COURT:  We're here in Criminal Docket No. 00-26,

5    United States of America versus Gregory Violette.  We're here

6    today on a petition to revoke supervised release.

7        Counsel, if you'd enter your appearance, please, for the

8    government.

9            MR. MOORE:  Yes, Your Honor.  Thank you.  James

10   Moore for the United States.

11           MR. BRANDMEIR:  Zachary Brandmeir for the defendant.

12           THE COURT:  Are you Mr. Violette?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Okay.  How old are you, sir?

15           THE DEFENDANT:  63, Your Honor.

16           THE COURT:  63.  And how far did you go in school?

17           THE DEFENDANT:  A bachelor's -- master's degree.

18           THE COURT:  Okay.  And are you aware why you're here

19   today?

20           THE DEFENDANT:  I believe so, Your Honor.

21           THE COURT:  Okay.  And you're represented today by

22   Mr. Brandmeir; is that correct?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  And do you understand that you have a

25   right to be represented by counsel throughout the proceedings?

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  And have you received a copy of the
 3   written charged violations?
 4              THE DEFENDANT:  I believe I did, Your Honor.
 5              THE COURT:  Well, do you believe you did, or you
 6   did?
 7              THE DEFENDANT:  I believe I did, yes, yes, Your
 8   Honor.
 9              THE COURT:  Have you read them?
10              THE DEFENDANT:  Yes, we went through them, yes, Your
11   Honor.
12              THE COURT:  And do you understand them?
13              THE DEFENDANT:  I believe I did, Your Honor.
14              THE COURT:  All right.  Have you had enough time to
15   discuss them with your attorney?
16              THE DEFENDANT:  I believe we have, Your Honor.
17              THE COURT:  All right.  Do you need any additional
18   time to talk to him?
19              THE DEFENDANT:  I don't believe so, Your Honor.
20              THE COURT:  Okay.  And you've told me you understand
21   the charges, correct?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  All right.  And, Mr. Brandmeir, is this
24   going to be an admission of these charges?
25              MR. BRANDMEIR:  Yes, Your Honor.
```

1        THE COURT:  All right.  You can sit down.  Let me

2   hear from the government with regard to the evidence the

3   government would have put on.

4        MR. MOORE:  Thank you, Your Honor.

5      To the extent this was a contested matter, the evidence

6   that would be introduced by the United States to establish the

7   violations include, first, with regard to the violation that

8   -- charge No. 1, violation of special condition No. 2, that

9   the defendant shall not incur new credit charges or open

10  additional lines of credit without approval of the probation

11  office, the government's evidence would establish, Your Honor,

12  that on October 26th, 2017, a home contact was conducted with

13  Mr. Violette by the United States Probation Office, and during

14  the course of that home contact, he appeared, based on

15  observations of the visiting officers, to be trading -- daily

16  trading of stocks based upon observations of his computer.

17     Further, on July 10th of 2018, United States Probation

18  Officer Phillips reminded the defendant that he is not to

19  conduct any business or financial transactions without first

20  consulting the probation office.

21     In October of 2018, Mr. Violette's fiduciary informed

22  Probation Officer Phillips that the defendant was talking with

23  a bank about obtaining a home loan.  Mr. Violette had not

24  reported to his probation office, nor had he requested

25  permission to obtain the mortgage.  A copy of the loan

1  application from Kennebec Federal Savings Bank was obtained by

2  the probation office, and included within that application,

3  Your Honor, was a question asking the defendant are there any

4  outstanding judgments against you, and Mr. Violette answered

5  no to that question.  Paperwork obtained by Kennebec Savings

6  Bank indicated that Mr. Violette was preapproved for a VA

7  mortgage loan in the amount of $150,000 on August 27th, 2018.

8  Mr. Violette did not obtain permission from the probation

9  office to apply for this mortgage or loan, and he was

10  dishonest, evidence would show, Your Honor, with his

11  supervising officer when questioned on October 16, 2018.

12      Approximately two weeks later, on October 28th, 2018,

13  Mr. Violette sent the United States Probation Officer Phillips

14  an e-mail with an attachment that included the Day's Jewelers

15  receipt indicating he had purchased jewelry totaling $2,068.16

16  and $2,000 was charged to his account.  Again,

17  Mr. Violette did not have permission from the probation office

18  to incur this credit.

19      On November 6th, 2018, Probation Officer Phillips spoke

20  with the loan officer at Kennebec Savings Bank account

21  specifically inquiring about Mr. Violette's report as to

22  having no outstanding judgment against him.  The loan officer

23  reported she would have expected him to answer yes based upon

24  his current federal judgment and restitution order.

25      Further, Your Honor, on November 13th, 2018, Mr. Violette

1  failed to report his Integrity Checking Account with Skowhegan

2  Savings Bank.  Documents submitted by Mr. Violette were

3  materially different than the financial documents obtained

4  directly from Skowhegan Savings Bank by the probation office.

5       Further, Your Honor, on October 3rd, 2018, Mr. Violette

6  failed to report the Kennebec Savings Bank account -- savings

7  or checking accounts on his monthly MSRs that were submitted

8  for July, August, and September of 2018.

9       Further, on November 14th, 2018, records received from

10  KeyBank indicated that the balance of Mr. Violette's banking

11  accounts were actually inconsistent with the figure that he

12  had reported to the probation office.

13       In March of 2019, the United States Probation Office

14  received records from Bangor Savings Bank indicating

15  Mr. Violette had opened three bank accounts under Real Estate

16  Man LLC from January 2017 through June of 2018.

17       Further evidence showed that on May 7th, 2018,

18  Mr. Violette wired $12,000 to a company registered in Nassau

19  -- Nassau, Bahamas, and then on the following day, he returned

20  to the Bangor Savings Bank branch to inquire as to why the

21  $12,000 was not yet deposited, and during the course of his

22  visit, he yelled at the teller and became verbally abusive to

23  staff members of Bangor Savings Bank.

24       Further, Your Honor, on May 22nd, 2018, a wire in the

25  amount of $12,840 was attempted to be posted to Gregory

1    Violette from the Nassau, Bahamas.  Mr. Violette again went

2    into the Bangor Savings Bank branch and yelled and used

3    profanities toward bank staff members.

4        Your Honor, further, with regard to Charge 2, violation

5    of the preamble, that the defendant shall not commit another

6    federal, state, or local crime, evidence of this violation

7    would include the October 2018 loan application that I

8    previously referenced in which he falsely stated in that

9    application that he did not have any outstanding judgment

10   against him.  He failed to disclose to the bank that, in fact,

11   there was a restitution order entered for over $400,000.

12   Also, as previously mentioned, he failed to disclose to the

13   probation office that he had applied for that mortgage.

14       Evidence would further establish, Your Honor, as -- as

15   you know, on the declaration of the defendant of his net worth

16   and cash flow, that he did make false statements, under the

17   penalty of perjury, signing these financial documents for the

18   probation office.

19       Further evidence of this violation, Your Honor, would

20   include November 6th, 2018, in which Probation Officer

21   Phillips spoke with the loan officer, as I mentioned, and she

22   indicated that under the facts presented, he should have

23   disclosed the restitution order, and he failed to do so in

24   obtaining approval for that home mortgage loan.

25       Further evidence, Your Honor, of a violation of law would

1    be the October 3rd, 2018 failure of Mr. Violette to report the

2    Kennebec savings and checking accounts on his MSRs submitted

3    for the three summer months of 2018 and also his material

4    misrepresentations to the probation office with regard to his

5    banking at KeyBank, in which he falsely reported his balances.

6    For the months of October 2018, November 2018, he stated he

7    had a balance of $76.75, where, in fact, records received from

8    KeyBank indicated that he had balances inconsistent with those

9    figures.

10        And then, finally, Your Honor, with regard to Charge 3,

11    the violation of standard condition No. 5, stating the

12    defendant shall work regularly at a lawful occupation unless

13    excused by the probation officer for schooling, training, or

14    other acceptable reasons.  The evidence would establish, Your

15    Honor, that on July 25th, 2018, the probation office was

16    alerted by the Maine Securities Office -- or Office of

17    Securities, an agency of the state government of the State of

18    Maine, that the defendant represented himself to be a real

19    estate agent, an investment advisor, and one who established

20    investment retirement accounts.  He, in fact, created and

21    published a Web site of www.increaseyourinterestrate.com,

22    offering to sell, quote, magic six-letter word, and a list of

23    banks and credit unions that would provide dramatically high

24    interest rates, as much as 12,400 percent higher to customers.

25    The owner further stated from the -- the state agency that

1  Mr. Violette was well aware he was engaging in activities that

2  required licensure and registration and that these activities

3  were purely fraudulent.

4       Further, Your Honor, with regard to the defendant's

5  failure to comply with this condition of supervised release,

6  in fact, the probation office obtained a decision and order

7  issued on November 19th, 2018, from the Maine Office of

8  Securities, which found that Mr. Violette indeed engaged in

9  unlawful activities and that Mr. Violette -- it states

10  specifically in the order, Your Honor, that Mr. Violette

11  understood he and Real Estate Man LLC were engaged in

12  activities that required licensure and activities that

13  involved securities that required registration, or exemption

14  from registration, and in activities that were purely

15  fraudulent.  The Office of Securities ordered Mr. Violette to

16  be barred from any association with any issuer, investment

17  advisor, or broker in the state of Maine and also imposed a

18  civil penalty in the amount of $5,000, which I understand to

19  this date, Your Honor, the defendant has refused to pay.

20            THE COURT:  Thank you.

21            MR. MOORE:  Thank you.

22            THE COURT:  All right.  Mr. Violette, if you'd

23  stand.

24            THE DEFENDANT:  Yes.

25            THE COURT:  I want you to understand that you have a

1    right to a hearing.  You can force the government to prove

2    these charges.  You would have a right to have your attorney

3    cross-examine any government witness, to object to any

4    evidence the government offers against you.  You'd have a

5    right to present evidence on your own behalf.  That includes

6    the right to subpoena witnesses to court, to force them to

7    come to court and testify for you.  You would have a right to

8    testify at the hearing.  You'd also have a right not to

9    testify.  Do you understand all of that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  All right.  I want you to also

12   understand that if you admit these charges, there will be --

13   there will be no hearing on them.  Now, do you wish to have a

14   hearing, or do you admit these charges?

15             THE DEFENDANT:  I admit to the charges, Your Honor.

16             THE COURT:  All right.  Thank you.  The defendant

17   admits the charges.  You may be seated.

18        I find that the defendant has knowingly and voluntarily

19   waived his right to a hearing and that the admission of these

20   charges was made knowingly and voluntarily.

21        Mr. Moore, have you received the revocation report?

22             MR. MOORE:  I have, Your Honor.

23             THE COURT:  Do you have any challenges to its

24   contents?

25             MR. MOORE:  I do -- I do not have any challenges,

1    but the government does have two dozen exhibits that we'd like

2    to be admitted.

3            THE COURT:  All right.  I'm going -- I'm going to

4    get to that.

5            MR. MOORE:  Thank you.

6            THE COURT:  Do you have -- so you have no

7    challenges?

8            MR. MOORE:  Correct.

9            THE COURT:  Mr. Brandmeir, do you have any

10   challenges to its contents?

11           MR. BRANDMEIR:  No, Your Honor.  Thank you.

12           THE COURT:  All right.  I'm going to accept the

13   guideline calculations set forth in the revocation report.

14       Before we get to the issue of sentence, government has

15   exhibits.

16           MR. MOORE:  Yes, Your Honor.  The United States has

17   Exhibits 1 through 24 that we wish to move into evidence for

18   the record.

19           THE COURT:  All right.  Any objection?

20           MR. BRANDMEIR:  No, Your Honor.

21           THE COURT:  All right.  They're all admitted.  I've

22   received them previously.

23           MR. MOORE:  Thank you.

24           THE COURT:  Just give them to the clerk.  Those are

25   the originals?

1          MR. MOORE:  Yes, Your Honor.

2          THE COURT:  Okay.  Give them to the clerk.

3          MR. MOORE:  Thank you.

4          THE COURT:  They're all admitted without objection.

5    Because I had those earlier, I'm not going to take any break

6    in terms of reviewing them since I've already reviewed them in

7    detail.  I don't need them.

8          THE CLERK:  Okay.

9          THE COURT:  Do you have any other evidence to

10   present?

11         MR. MOORE:  No, Your Honor.

12         THE COURT:  All right.  Defendant have any other

13   evidence to present?

14         MR. BRANDMEIR:  He may wish to offer a statement to

15   the court, Your Honor.

16         THE COURT:  He may allocute?

17         MR. BRANDMEIR:  Yes.

18         THE COURT:  Okay.  All right.  I'm going to deal

19   with that.

20      Before I hear argument from counsel, I want to hear the

21   allocution of this defendant so that they can take that into

22   account.

23         MR. BRANDMEIR:  Okay.

24         THE COURT:  Okay?  Stand right up, right where

25   you --

1          THE DEFENDANT:  Thank you, Your Honor.

2          THE COURT:  Yeah, just speak up.

3          THE DEFENDANT:  I'll try my best, Your Honor.

4          THE COURT:  Take your time.  No rush at all.

5          THE DEFENDANT:  Thank you, Your Honor.

6     Your Honor, the court, the DA, and probation, I apologize

7  for everything I have done wrong.  I am not perfect, but I am

8  willing to try my best.  I have done things wrong, and it is

9  my problem and my fault and no one else's.

10         One thing that is and will be different is having Barbara

11  Crawford, my fiancée, in my life helping me do the right

12  things daily.  She is a great lady and help, helping me with

13  the proper discipline daily since knowing my picture since

14  November 2018.  Given a chance, I know I can do the right

15  things daily.  I have learned my lesson and met Barbara, which

16  would give me the fair chance at life.  I would ask the court

17  to give me a chance to pay $1,200 a month restitution and my

18  -- and get me -- and get my restitution paid off.  I ask the

19  court for a chance to prove I can do the right things daily.

20         My mind-set is different.  My goals are different.  I can

21  do better with being told what and how to do it following the

22  directions of Barbara.

23         Thank you, Your Honor.

24          THE COURT:  Thank you, sir.

25         All right.  Let me hear from the government with regard

1    to sentence.

2                MR. MOORE:  Thank you, Your Honor.

3        May it please the court, Judge Singal, and defense

4    counsel, Attorney Brandmeir.  The government respectfully

5    joins with the United States Probation Office, Your Honor, in

6    recommending that the court impose consecutive three-month

7    terms of imprisonment for a total of 27 months.

8        It is clear that the prison term previously imposed by

9    this court in resentencing the defendant, as well as the

10   10- and 18-month terms that were imposed by the court in the

11   defendant's first and second revocations, were not

12   sufficiently lengthy to sufficiently defer -- deter this

13   defendant and punish him for violating the law, for failing to

14   comply with conditions of supervised release, and for failing

15   to pay court-ordered restitution.

16       Although I'm certain Your Honor very well remembers this

17   case, given the passage of time, with Your Honor's permission,

18   I'd like to just summarize briefly the proceedings for the

19   past three years in this case.

20       On March 16th of 2015, the defendant acknowledged, when

21   he testified here in open court, that he had defrauded many

22   victims and stole money from them.  While the defendant

23   previously admitted at revocation proceedings that he was

24   required to pay court-ordered restitution in excess of

25   $400,000 to the victims of his crimes, supervision of the

1   defendant revealed he had made more than 50 false

2   certifications, that he was being paid about three times more

3   in social security and OPM payments than he had reported to

4   the probation office, and that he had received over half a

5   million dollars from the time of his sentencing to the period

6   when he was resentenced in monthly government benefits, from

7   that period of 2002 to 2015, Your Honor.

8        As of June of 2015, the defendant had voluntarily paid

9   only $1,100 out of the over $400,000 in restitution ordered by

10  this court.  At the same time, with the knowledge of his

11  restitution obligation and that he did not have an ownership

12  interest in the home of his then wife, the defendant

13  nonetheless authorized his wife to apply $83,000 in VA

14  benefits to constructing an addition to her home.  Rather than

15  apply the funds to restitution, the defendant made a

16  calculated decision to spend the money on improvements of his

17  wife's -- of his wife's residence, which were beyond --

18  essentially beyond the reach of the government.

19       In the same way that the defendant previously concealed

20  funds from -- from the probation office, he has once again

21  returned to his old ways.  In monthly supervision reports that

22  the defendant submitted to the probation office for the months

23  of July, August, and September of 2018, Mr. Violette disclosed

24  only two or three accounts, which had balances ranging from

25  $5.96 to $67.48.

1    Further investigation revealed that the defendant failed

2    to report Kennebec Savings Bank accounts, which had more than

3    $13,000, and also a Skowhegan -- Skowhegan Savings Bank

4    account, which had a balance of $3,000, markedly greater than

5    what he reported to probation.

6    Officer Phillips, as Your Honor knows, took an enormous

7    amount of time to provide this court with a revised report,

8    including extensive details, and she reported at least half a

9    dozen occasions when financial documents and other

10   information, such as a lease, public utility records,

11   passwords to bank accounts, were requested by her and the

12   defendant willfully refused to provide the requested

13   information.  When the probation office obtained financial

14   records on its own, it was clear the defendant had repeatedly

15   made omissions and failed to report his income.

16   If the defendant's concealed banking transactions did not

17   make his intent to avoid payment of restitution clear enough,

18   he wrote the following in a January 3rd e-mail to his

19   VA-appointed fiduciary, who oversees the expenditure of his VA

20   benefits.  Mr. Violette wrote, quote, I will make myself very

21   clear, followed by five exclamation marks, I do not want you

22   to pay any restitution, followed by another five exclamation

23   marks.  Mr. Violette added the next day, in an e-mail to the

24   fiduciary, that, quote, there is a problem, another five

25   exclamation marks, I repeat myself, I do not want you to pay

1    any restitution out of my money, again, another five

2    exclamation marks, and then he added, believe me, you do not

3    want any more problems.  At the end of his e-mail to the

4    fiduciary, he asked her to stop talking with the U.S.

5    Attorney's Office about any of his matters.

6        The defendant's fiduciary reports he has filed two

7    lawsuits against her in state court claiming, in part, that

8    she wrongfully communicated with the probation office, that

9    she improperly made payments of restitution on his behalf, and

10    requesting a combined total of $700,000 in damages.  The

11    defendant also filed a lawsuit against Volunteers of America,

12    the halfway house which supervised him as part of his previous

13    federal sentence.

14        Neither the defendant's fiduciary, nor the Volunteers of

15    America -- in this case, it's a particular employee of the

16    Volunteers of America, who has a privately retained

17    attorney -- neither of these parties should have been

18    subjected to a vindictive, harassing lawsuit for carrying out

19    the orders of this court.

20        Perhaps of greater concern than the defendant's blatant

21    and outright efforts to willfully and knowingly refuse to pay

22    restitution in violation of the court's orders is the source

23    of the funds which were deposited in the concealed bank

24    accounts.

25        As set forth in Government Exhibit No. 1, Your Honor, the

1   Maine Department of Professional and Financial Regulation,

2   Office of Securities, issued the previously mentioned November

3   2018 decision in which they found the defendant was acting as

4   an investment advisor and a broker without being licensed as

5   required by Maine law, that he had possessed misleading

6   information and made fraudulent claims regarding investment

7   opportunities, and that he was ordered to pay the $5,000 civil

8   penalty that I mentioned and he hasn't paid that back.

9       The defendant offered on his Web site, for fees ranging

10  from $50 per month to $600 per year, Your Honor, to identify

11  for his clients banks and credit unions which were offering

12  interest rates 125 times higher and earning on average

13  8 percent more in monthly benefits.  He identified himself as

14  a joint venture partner or manager who could instantly

15  increase his clients' interest rates dramatically.

16      There is also a lot of other aggravating factors in

17  Officer Phillips' revised revocation report -- the entry of

18  the protection from abuse order after the defendant repeatedly

19  threatened to kill his roommate, his wiring of thousands of

20  dollars to the Bahamas, as well as his yelling profanities at

21  bank tellers, his apparent day trading of stocks, and his five

22  civil lawsuits, all seeking at least $250,000 in damages,

23  including his unreported receipt of $10,000 from General

24  Mills.

25      The defendant's efforts to conceal tens of thousands of

1    dollars suggests he obtained the money through financial
2    fraud.  Financial fraud is one of the fastest growing forms of
3    abuse and is very difficult to combat, in part, because it
4    often goes unreported.  Many of the victims of this type of
5    fraud, Your Honor, are elderly or are naive, and because they
6    are too confused, because they're too fearful, or because they
7    are too embarrassed, they -- they don't report this type of
8    crime.
9        In retrospect, Your Honor, and in conclusion, it's clear
10   this defendant has no intent to pay restitution, and the only
11   reason he has paid restitution is because he's under
12   supervision of the probation office.
13       The -- I'd also add that although the defendant has paid
14   back a certain amount of restitution with accumulated interest
15   since 2002, his original sentencing, the amount he still owes
16   exceeds over $400,000.
17       In light of the defendant's history, including his
18   repeated and knowing failures to pay restitution, as well as
19   the need to promote respect for the law, as well as deter the
20   defendant, Your Honor, the United States respectfully requests
21   that this court impose a sentence of imprisonment of at least
22   27 months as recommended by the probation office.
23       Your Honor, in light of the clear intent of the defendant
24   as stated in his e-mails to his fiduciary and his own
25   behavior, we would also respectfully request that the court,

1    for that remaining time period, to the extent that the maximum

2    is not imposed, that that remaining time period that he remain

3    under supervision in order to protect others against his --

4    his fraud and also to ensure that payments are made to the

5    victims of his crimes.

6        Thank you, Your Honor.

7            THE COURT:  Thank you.

8        Mr. Brandmeir?

9            MR. BRANDMEIR:  Well, Your Honor, clearly, the best

10   apology is changed behavior, and I wish we were here

11   presenting some more of that, but in this case, unfortunately,

12   the record doesn't look good for my client, and we're

13   certainly not here to present the court with any explanations

14   or excuses.

15           THE COURT:  Let me -- let me ask you a quick

16   question, Mr. Brandmeir.  What is there this magic six-letter

17   word would allow?  You don't know, or do you know was there

18   really a magic six-letter word?

19           MR. BRANDMEIR:  I don't.

20           THE COURT:  You don't know?

21           MR. BRANDMEIR:  I didn't inquire of my client about

22   that.

23           THE COURT:  You didn't ask.  All right.  That's

24   probably wise.  Go ahead.

25           MR. BRANDMEIR:  But -- so I'll keep my argument very

1  brief, Your Honor.  I think there's only three things I have

2  to present to the court.

3      The first is -- the first potentially mitigating factor

4  is the fact he's here today, he's admitting the violations.

5      The second is that even though the evidence may suggest

6  that some of this was done in a kicking and screaming fashion,

7  for lack of a better term, the last time we were here, there

8  was only -- I think the outstanding balance of restitution was

9  over 400,000, I think around 406,000, and at present, it's

10 down to 319,000.  And I wanted to double-check with probation

11 because I know that the facts present the idea that his

12 ex-wife was ordered to pay, I think, over $30,000 out of the

13 probate court in the State of Maine, but checking with

14 probation, I believe it's accurate to say that other than a

15 few payments of a hundred dollars, the -- the vast majority of

16 that $80,000 decrease has come from Mr. Violette or his

17 payments to the government.  So that's the second thing I have

18 to offer.

19     And the third thing I have to offer is I'm sure the

20 court's wondering, well, what's going to be -- what's going to

21 be different this next time?  And I always sort of struggle to

22 try and think of -- of what I'm going to present the court

23 there.  And the truth is I've heard Judge Woodcock say this

24 before, and I -- I agree with it, that at some point, you have

25 to stop talking about potential because your record is what

1    your record is.  And I think in this case, the -- the record

2    is poor, but the only thing I have to offer in terms of going

3    forward is that my client, as he stated, he is in a

4    relationship with a Ms. Barbara Crawford, and I think now

5    that, you know, she's more aware of what things are going on,

6    there's some hope that, you know, maybe somebody in the home

7    who -- I would just indicate the last go-round, it seemed like

8    some -- you know, there was this premarital agreement, that

9    there was some thought that perhaps the other party was not a

10   good influence.  I think in this case -- but my client's not

11   making excuses -- I didn't mean to bring it up for that

12   fashion -- but I think in this case, there's someone new in

13   the picture who -- who hopefully will be better.

14       I spoke with Ms. Crawford about that; she seems to be

15   adamant about that.  She is not present in the courtroom today

16   because she actually, I think, broke both her wrists and

17   couldn't -- couldn't transport down here, Your Honor.

18       But those are essentially the three things I have to

19   offer potentially by way of mitigation, and, again, I just

20   want to be clear to the court, we're not trying to explain

21   things or excuse things or quibble with the facts this

22   afternoon.

23       So then what is the recommendation of the defense?  Well,

24   in this particular case, Your Honor, what we would be offering

25   is trying to -- to convince the court that perhaps a period of

1  home confinement would be more productive, and while a

2  defendant shouldn't get the benefit of his own misdeeds, the

3  truth is that if he's -- if he's not incarcerated, we believe

4  that if he's in home confinement, that he would still be able

5  to get benefits and have those garnished through the VA payee.

6  So in this case, I think it would make more sense to -- for

7  the victims, one; second, I think it may save the government

8  some expense in terms of incarceration.

9      But we would ask that the court impose a period

10 essentially -- an additional period of supervised release with

11 a condition of home confinement instead of an additional

12 period of incarceration, and my client is -- is, frankly, fine

13 with -- if the court were inclined to stick with probation's

14 recommendation of 27 months, of three months' consecutive

15 periods on nine counts, we would be fine with the court

16 imposing consecutive periods of supervised release of three

17 months with home confinement substituted instead of

18 incarceration.

19     But that's our argument to the court, Your Honor.

20         THE COURT:  Thank you.

21     Anything else from the government?

22         MR. MOORE:  Your Honor, defense counsel correctly

23 noted the balance of restitution owed, but if we were to

24 include the interest, which is required, the amount that he

25 owes is actually $413,610.84.

1        Thank you.

2            THE COURT:  Thank you.

3        All right.  I've reviewed all the factors required by

4    statute in this matter, taken into account the nature of

5    what's happened, certainly the personal characteristics and

6    history of this defendant.

7        This matter is a 00 docket, which means it started back

8    in 2000.  I've been involved with Mr. Violette from the time I

9    became a federal judge.  We've known each other as long as

10   I've been on the bench.

11       In looking through the record here, I note that the first

12   petition back in 2013 involved multiple false statements about

13   assets, filing false supervision reports, failing to provide

14   financial information, opening lines of credit without

15   approval.  Mr. Violette got ten months.

16       The second one -- second petition involved failure to

17   obey his probation officer's orders to provide full financial

18   statements, failing to appear for a financial disclosure

19   hearing, failing to apply money to restitution.  He got 18

20   months.

21       This revised revocation report contains so much in terms

22   of the defendant's conduct that I would advise the reader of

23   this transcript to review the report.  It's just a long series

24   of deliberate falsehoods being made to the probation officer,

25   a series of actions by the defendant in the nature of catch me

1   if you can.  It's a series of deliberate falsification and

2   attempts to pay restitution.  It's a series of events where

3   the defendant not only was being punished for his earlier

4   fraud and deception that resulted in his original sentence, he

5   -- he began doing it again until the State of Maine caught

6   him.

7       This is the most egregious case of deliberate disregard

8   of court orders and conditions of supervised release that, in

9   my 20 years as a federal judge, I've seen.  I -- this is just

10  an individual who couldn't care less about court orders,

11  couldn't care less about continuing efforts of the probation

12  officer to get him to adhere to the terms of supervised

13  release, which are, in fact, court orders themselves, and a

14  deliberate callousness to the rules of society.

15      I'm going to adopt the probation recommendation.  I'm not

16  sure 27 months vindicates the public justifiable relief that

17  the courts of law in this country should have some effect on

18  individual behavior.  I have to admit that all of the work

19  we've done in this case, since the time I've become a judge,

20  all of the work of the probation officer, all of the work of

21  the prison system, all of the work of defense counsel talking

22  to their client has resulted in no improvement whatsoever --

23  none.  I don't know what else we can do except have

24  Mr. Violette stay off the streets for a while, during which

25  time we can at least provide the public some assurance that he

1  won't be committing additional acts against society.  So,

2  Mr. Violette, if you'd rise for sentence.

3      This defendant is hereby committed to the custody of

4  United States Bureau of Prisons to be imprisoned for three

5  months on each of Counts 9, 13, 16, 37, 43, 44, 66, 70, and

6  76, to run concurrently, for a term of 27 months.  No

7  supervised release will follow.  I'm not going to impose on

8  the probation department any more of a burden of chasing

9  Mr. Violette around.

10      Unfortunately, my full expectation is that when

11  Mr. Violette gets out of jail, some judge, whether federal or

12  state, will have an additional occasion to have Mr. Violette

13  meet him while Mr. Violette is dressed in an orange suit

14  because I'm just not hopeful that Mr. Violette will be able to

15  control himself when he gets the idea in him that there is

16  some sheep to be sheared out there in society.

17      Defendant still has a $2,000 assessment and his prior

18  restitution, $422,657.89.  He'll get credit for any amounts

19  paid to date.

20      Mr. Violette, I must advise you that you have a right to

21  appeal the revocation, as well as the sentence.  If you wish

22  to effectively exercise that right of appeal, you have to file

23  a written notice of appeal within 14 days of today and not

24  after that.  If you fail to file it within that period of

25  time, you will have given up your rights of appeal.  If you

1     cannot afford to file an appeal, all you have to do is ask and

2     the clerk of this court will file that appeal for you without

3     any cost at all.  Do you understand?

4            THE DEFENDANT:  Yes, Your Honor.  Thank you.

5            THE COURT:  All right.  Is there anything else from

6     the government?

7            MR. MOORE:  No, Your Honor.  Thank you.

8            THE COURT:  Anything else from the defense?

9            MR. BRANDMEIR:  No, Your Honor.

10            THE COURT:  Is there something from you?

11            THE CLERK:  Yes.

12            THE COURT:  They run consecutively.

13            THE CLERK:  Okay.  Thank you.

14            THE COURT:  Thank you.  I think I said it, but if I

15     didn't, I think they -- I'll say it again.  Thank you.

16       Defendant's remanded in execution of sentence.  Thank

17     you.

18       (Proceedings concluded at 1:39 p.m.)

19                   CERTIFICATION

20       I certify that the foregoing is a correct transcript from

21     the record of proceedings in the above-entitled matter.

22

23

24     /s/ Julie G. Edgecomb_____        August 22, 2019____
         Julie G. Edgecomb, RMR, CRR        Date

25     Official Court Reporter